IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 19-CR-2029 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | BRIEF IN SUPPORT OF |
| | ) | MOTION TO SUPPRESS- |
| AARON OLSON, | ) | **HEARING ARGUMENT** |
| | ) | |
| Defendant. | ) | |

COMES NOW counsel for the Defendant, Aaron Olson, and submits the following Argument in Support of his Motion to Suppress Evidence.

## I. INTRODUCTION

The Defendant preserves and advances all of his arguments from his Motion to Suppress. Docket Numbers 24 and 24-1. That said, the Defendant will focus his argument on whether a *Miranda* violation occurred and whether the evidence obtained pursuant to the search warrants must be suppressed under *Franks*.[1]

## II. ARGUMENT

A.    *Miranda*

Under cross-examination, Agent Turbett eventually admitted that the Defendant was seized and not free to leave when Agent Turbett informed him that there was a search warrant for the Defendant's DNA and for photographs of the Defendant's naked body. Agent Turbett

---

[1] The Defendant has ordered, but not received, an expedited copy of the transcript from the hearing on his motion to suppress. As such, any recital of testimony from the hearing is done to the best of the under-signed's recollection.

1

further acknowledged that prior to detaining the Defendant for the purpose of executing the search warrant against him, that the Defendant had not admitted to sexually abusing his daughter. The Defendant respectfully submits that his seizure pursuant to the search warrant's execution rose to the level of "custody" for purposes of *Miranda*.

The "task of defining 'custody' is a slippery one." *Oregon v. Elstad*, 470 U.S. 298 (1985). Custody occurs when a suspect is deprived of his freedom of action in any significant manner. *United States v. Griffin*, 922 F.2d 1343, 1347. In deciding whether a person was "in custody," courts must examine both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation "in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Griffin*, 922 F.2d at 1347. Therefore, if the Defendant believed his freedom of action had been restrained to a "degree associated with formal arrest" and his "belief was reasonable from an objective viewpoint," then he was "held in custody during the interrogation." *Id*. 922 F.2d at 1347.

Here, the disclosure of the search warrant to the Defendant, and more specifically, the detention of the Defendant to obtain his DNA and photographs of his naked body resulted in the deprivation of his freedom of action in a "significant manner." But, it is not just that the Defendant was told that he would be detained for a DNA swab and nude photographs, it is also that he was told that his apartment would be searched and that Agent Turbett needed to take his cellphone away from him. Exhibit 1, at page 175. Under those circumstances, it is arguable that a reasonable person would have understood themselves to be in custody.

Further, while the Defendant acknowledges that Agent Turbett informed the Defendant that he was free to leave, because those minimizing statements by Agent Turbett occurred before

2

the Defendant's detention incident to the search warrant's execution, they do not alter the fact that the Defendant was in custody for purposes of Miranda when Agent Turbett reiterated his desire to "have that honest conversation." Exhibit 1, at page 178. Importantly, Agent Turbett said nothing about the Defendant being free to leave or being free to not answer his interrogations subsequent to disclosing (more than three hours after the interrogation began) the existence of a search warrant. Of course, it is not coincidence that immediately before Agent Turbett repeated his desire to have that "honest conversation" with the Defendant, that he told the Defendant that this "honest conversation: should occur "before we go up and…and start to…to do all the things and gather up all the things that we need to gather up…." *Id*.

It is within this precise context that the Defendant (finally) succumbed to Agent Turbett's dogged interrogation. That is, the Defendant uttered his inculpatory admissions with the knowledge that he would be swabbed, photographed and searched. And, the issue is not necessarily whether the Defendant was under arrest, but rather whether he was in custody to a "degree associated with formal arrest." The Defendant respectfully submits that after three hours of interrogation within a governmental building, under the cover of darkness, and upon being informed that he would be swabbed, photographed, searched, and have his cellphone taken from him, that the Defendant would have believed his freedom of action had been restrained to a "degree associated with formal arrest" and that his "belief was reasonable from an objective viewpoint."

B.    *Franks*

Initially, the Defendant respectfully asserts that the testimony of Elizabeth Griffin established the necessary preliminary showing that the warrant affidavits contained misleading information that exhibited a "reckless disregard for the truth." Turning to the substance of the

argument, Ms. Griffin's testimony regarding how her professional community defines the term "preferential child sex offender" and that "preferential child sex offender" constitutes a professional term of art establishes the incredibility of Agent's Turbett's testimony that the warrant was not attempting to diagnose the Defendant as a "preferential child sex offender" and/or that it was coincidental that a professional term of art appeared in the search warrant affidavits. Indeed, as Agent Turbett testified that what little training he received on "preferential child sex offenders" consisted of learning that these "sex offenders" "prefer" particular "children" it is difficult to see to what "training" the search warrant affidavit referred. Moreover, Ms. Griffin's testimony thoroughly explained why (and cautioned against) "training" should not be relied upon by law enforcement in their investigations into sex offenders.[2]

The Defendant acknowledges Ms. Griffin's testimony regarding the coincidence between sexual abuse and the production of child pornography; the Defendant respectfully submits that, absent the objected-to sentences, that the remainder of the search warrant affidavit does not establish probable cause to search the Defendant devices.

Finally, the Defendant respectfully asserts that the *Leon* exception does not apply because the search warrant affidavit contains misleading statements made with reckless disregard for its truth.

### III. CONCLUSION

For all the foregoing reasons above, Defendant requests that the Court grant the Motion to Suppress Evidence.

---

[2] The Defendant, obviously, does not suggest that experience may play no role in search warrant affidavits. Surely, an officer may opine on what their experience reveals in areas that lend themselves to "common sense." But, it makes no sense in this day and age of "analytics" that an untrained officer may opine on subjects as nuanced as the behaviors and predilections of "preferential child sex offenders."

FEDERAL DEFENDER'S OFFICE
222 Third Avenue SE, Suite 290
Cedar Rapids, IA  52401-1509
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542

BY: /s/  Christopher J. Nathan
CHRISTOPHER J. NATHAN
christopher_nathan@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, I electronically filed
this document with the Clerk of Court using the ECF system
which will serve it on the appropriate parties.

By:  /s/ C. Maas

5